UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
OWENSBORO DIVISION

CIVIL ACTION NO. 4:14CV-00091-JHM

CHAD MCGEE                                                                                              PLAINTIFF

V.

PITTSBURG TANK & TOWER COMPANY INCORPORATED                        DEFENDANT

**MEMORANDUM OPINION AND ORDER**

This matter is before the Court on a motion by Defendant, Pittsburg Tank & Tower Company, Inc., for summary judgment [DN 13] and on a motion in limine by Defendant to strike from the record the Affidavit of Jeff Martin [DN 21]. Fully briefed, these matters are ripe for decision.

**I. STANDARD OF REVIEW**

Before the Court may grant a motion for summary judgment, it must find that there is no genuine dispute as to any material fact and that the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). The moving party bears the initial burden of specifying the basis for its motion and identifying that portion of the record that demonstrates the absence of a genuine issue of material fact. Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986). Once the moving party satisfies this burden, the non-moving party thereafter must produce specific facts demonstrating a genuine issue of fact for trial. Anderson v. Liberty Lobby, Inc., 477 U .S. 242, 247–48 (1986).

Although the Court must review the evidence in the light most favorable to the non-moving party, the non-moving party must do more than merely show that there is some "metaphysical doubt as to the material facts." Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio

Corp., 475 U.S. 574, 586 (1986). Instead, the Federal Rules of Civil Procedure require the non-moving party to present specific facts showing that a genuine factual issue exists by "citing to particular parts of materials in the record" or by "showing that the materials cited do not establish the absence . . . of a genuine dispute[.]" Fed. R. Civ. P. 56(c)(1). "The mere existence of a scintilla of evidence in support of the [non-moving party's] position will be insufficient; there must be evidence on which the jury could reasonably find for the [non-moving party]." Anderson, 477 U.S. at 252. It is against this standard the Court reviews the following facts.

## II. BACKGROUND

Defendant, Pittsburgh Tank & Tower Company ("PTT"), designs, fabricates, and erects tanks. Plaintiff, Chad McGee, was employed as project manager with PTT from September 28, 2006, until his termination on January 27, 2014. As project manager, McGee's job duties included acting as a liaison between PTT and its clients, hiring subcontractors, making site visits as necessary, scheduling work crews, procuring materials according to job specifications, and otherwise overseeing projects. PTT paid McGee a salary. According to McGee, PTT promised McGee a two percent commission on change orders on jobs for which McGee served as project manager. McGee alleges that PTT Vice President Rick DiZinno promised McGee the two percent commission on change orders during McGee's employment interview with the company. From 2006 to 2011, McGee regularly received two percent commission on change orders and was paid a commission on every commission request he turned into PTT. In addition to the commission incentive, PTT also maintained a written bonus program for project managers. Under the bonus program, PTT paid project managers quarterly bonuses based on certain performance standards, including cost savings. Each quarter, PTT awarded a bonus to one

project manager in each category as described in the program. Paul Swain, Plaintiff's immediate supervisor, oversaw the program.

From 2011 to 2013, McGee worked as project manager for a PTT job for Cape Canaveral Energy Center in Cape Canaveral, Florida. During this project, PTT received a change order from Cape Canaveral requesting a new tank. The amount of the change order was $3,663,518. After receiving the change order, McGee claims that PTT management informed McGee that he would not receive a two percent commission because DiZinno was not going to pay McGee a commission of $73,270.36 on the change order for a new tank.

McGee filed suit against PTT on September 15, 2014, alleging claims for breach of contract and promissory estoppel. McGee alleges that PTT failed and refused to pay McGee the $73,270.36 commission to which he was entitled pursuant to the oral contract or promise. McGee further asserts that he achieved the cost-savings required for payment of the 2013 quarterly bonus under the PTT bonus program, but PTT failed to pay McGee the bonus to which he was entitled.

PTT now moves for summary judgment against McGee on all claims arguing that he failed to produce sufficient evidence that he was entitled to a commission on the change order for the new tank or the 2013 quarterly performance bonus incentive.

### III. DISCUSSION

**A. Breach of Contract**

To recover in any action based on breach of contract under Kentucky law, the party seeking to recover must "show the existence and the breach of a contractually imposed duty." Lenning v. Commercial Union Ins. Co., 260 F.3d 574, 581 (6th Cir. 2001); Strong v. Louisville & Nashville R. Co., 43 S.W.2d 11, 13 (Ky. 1931). The elements of a breach of contract are: (1)

3

the existence of a valid contract; (2) breach of the contract; and (3) damages flowing from the breach of contract. <u>Metro Louisville/Jefferson County Government v. Abma</u>, 326 S.W.3d 1, 8 (Ky. Ct. App. 2009) (citation omitted). "[A] valid oral contract, like a written contract, requires 'offer and acceptance, full and complete terms, and consideration.'" <u>Lore, LLC v. Moonbow Investments, LLC</u>, 2014 WL 507382, *6 (Ky. Ct. App. Feb. 7, 2014)(quoting <u>Coleman v. Bee Line Courier Service, Inc.</u>, 284 S.W.3d 123, 125 (Ky. 2009).

PTT maintains that McGee cannot succeed on his breach of contract claims because he failed to meet the requirements to receive a commission. In support of its position, PTT submits a memo dated August 22, 2006, regarding change order commissions for project managers. PTT contends that this memo memorializes PTT's project manager commission policy and applies to McGee's commission claim.[1] PTT claims that it appropriately used its discretion to determine that McGee was not entitled to commission under the Memo and is entitled to summary judgment under the "business judgment" rule.

---

[1] The August 22, 2006 Memo provides as follows:

> Due to recent conversations, let this memo serve to clarify what constitutes a project change order that qualifies for a 2% commission for the Project Manager.
>
> First, the change order must be profitable. As a rule of thumb, project change orders should be 5-15% more profitable than the original margin carried on a new tank project. Secondly, new tanks or additional tanks to existing projects **do not** qualify as a change order for the Project Manager, but rather will be paid to the respective responsible sales person, **unless** management determines that the Project Manager was instrumental in the procurement of the new tank and should be compensated. This is at the sole discretion of management on a case by case basis. Additional new tanks on a specific existing project may come in writing from the customer as a "change order" or a contract modification, but will only qualify as income to a Project Manager if the aforementioned criteria has been met. Additionally, other items that a sales person has estimated and priced (i.e. Insulation, Painting, etc.) does not qualify as change order due the Project Manager, but rather a payable sale to the sales person, **unless** management determines otherwise.
>
> If you have any questions regarding this memo or the content thereof, please bring them to my attention at your earliest convenience.

The Memo has Rick DiZinno's name typed on it at the bottom. There is no signature on it.

4

The Court finds that summary judgment is inappropriate in this case because viewing the facts in a light most favorable to McGee, there remain questions of material fact regarding the contractual relationship between PTT and McGee and whether that relationship was breached.

First, McGee alleged an oral contract existed between the parties with regard to the commission program. McGee submitted evidence that PTT promised McGee a two percent commission on change orders on jobs for which McGee served as project manager. McGee testified that from 2006 to 2011, he regularly received two percent commission on change orders and was paid a commission on every commission request he turned into PTT. McGee represents that he was never made aware of any written policy related to commission on change orders, never advised by DiZinno or other PTT representatives that he would not be paid two percent commission on change orders for new tanks, or never advised that he had to meet certain requirements to receive the commission. In fact, the record reflects that DiZinno acknowledged creating the PTT project manager commission program. Contrary to PTT's argument regarding the Memo, DiZinno testified that he did not recall putting any qualifying factors to the commission program in writing; instead, he communicated those factors regarding commissions to project managers verbally. Moreover, consistent with McGee's testimony, Sean Forbes and Jeff Martin, project managers during the time period in question, testified that they did not recall any written document regarding a PTT change order commission policy. (Forbes Dep. at 7-8.) Accordingly, a genuine dispute of fact exists between the parties as to whether the August 22, 2006 Memo relied upon by PTT applied to DiZinno's promise of commission to McGee.

Second, questions of fact remain on whether PTT management ever placed oral or written conditions or qualifications on change order commissions.[2]  McGee testified that PTT

---

[2] DiZinno testified that for a project manager to be paid a commission on a change order, three factors had to be met: (1) the change order had to be profitable; (2) PTT had to collect the money from the client; and (3) the

5

management never qualified or conditioned payment of commissions. In support of his testimony, McGee submitted the testimony of Jeff Martin, a project manager between 2006 and 2013. Martin averred that PTT promised him two percent commission on change orders on jobs for which he served as project manager, that he never saw or was made aware of any written policy that related to commissions on change orders, and that he was never told of the exclusion of new tanks or any qualifying factors for project manager commissions. (Martin Aff. at ¶¶ 1-6). (But see Forbes Dep. at 7-8, 10, 14-15)(Sean Forbes confirmed that during his initial interview with PTT he was informed that project managers received two percent commission on change orders; however, it was his understanding that project managers were not paid commission on new tanks.))

Additionally, the record reflects that during the period in question PTT paid project managers commission on new tanks. In 2011, PTT paid Martin and another project manager Joe McGarrh a two percent commission on change orders for a new tank in Job Nos. 6625 and 6590 respectively. (Martin Aff. at ¶ 9; PTT's Ans. To Interr. 8.) PTT also paid Plaintiff a commission on a change order for a new tank on December 5, 2010, on Job No. 6497. (Id.) DiZinno acknowledged in his deposition that there were times when PTT paid commissions to project managers on new tanks even when the requirements for a commission were not met. (DiZinno Dep. 16-19.)

Third, assuming that PTT placed certain conditions upon the payment of change order commissions, questions of fact remain regarding whether McGee met those conditions. McGee testified that he received a change order commission for a new tank on a Clarksville project

---

project manager had to be "instrumental in the change order itself." (DiZinno Dep. at 16-17.) DiZinno later testified that additional requirements to obtain a commission were that the project manager had to be qualified and have the expertise to acquire the change order and the items within the change order could not have been previously priced by a PTT salesperson. (Id. at 36-38.)

mentioned above and that he performed the same tasks on both jobs. In fact, he visited the Cape Canaveral site on more occasions than he did the Clarksville site. (McGee Dep. at 56-57, 98.) Further, the record reflects that DiZinno did not recall whether he consulted with Swain as to whether McGee should have been paid on the Cape Canaveral project (DiZinno Dep. at 37, 44) and no member of management consulted with Michael Robitzsch, the PTT salesperson assigned to the Cape Canaveral job regarding McGee's role or instrumentality in the change order (Robitzsch Dep. at 18-19).

Fourth, PTT's reliance on the business judgment rule is misplaced. The business judgment rule applies primarily to employment discrimination actions. The doctrine provides that "[i]f the employer had an honest belief in the proffered basis for the adverse employment action, and that belief arose from reasonable reliance on the particularized facts before the employer when it made the decision, the asserted reason will not be deemed pretextual even if it was erroneous." Upshaw v. Ford Motor Co., 576 F.3d 576, 586 (6th Cir. 2009). The business judgment rule does not apply to this case. This is a breach of contract case. Here, the fact that PTT paid commission on the change order to a salesperson because PTT management determined he played a vital role in procuring the change order for the new tank does not resolve the breach of contract claim. If McGee was entitled to receive a commission on *all* change orders on projects for which he served as project manager pursuant to the oral contract, failure to pay the commission to McGee would constitute breach of the contract despite the fact that PTT management may not believe McGee deserved the commission and awarded the commission to someone else.

Finally, a review of the record reveals genuine disputes of material fact on McGee's claim for breach of the bonus compensation agreement. McGee submitted evidence that prior to

7

the calculation of bonuses for the 2013 quarter, DiZinno asked McGee to pay additional funds to a subcontractor out of a job on which McGee was currently a project manager. The subcontractor had previously performed work for PTT on a job to which McGee was not the project manager. To compensate the subcontractor for lost time and profits from the previous job, DiZinno asked McGee to pay the subcontractor out of funds from a project to which McGee was assigned. Because McGee was required to pay the subcontractor, McGee's cost savings percentage was reduced by several percentage points. McGee claims that if he had not been required to pay the subcontractor, McGee's percentage would have been 45%, which would have qualified him for the bonus. McGee testified that he brought this to management's attention, but PTT failed and refused to pay McGee the bonus. In its motion and reply, PTT fails to address the incentive bonus issue or submit evidence that it is not liable for the payment of McGee's 2013 bonus.

For these reasons, the Court denies PTT's motion for summary judgment on the breach of contract claim.

### B. Promissory Estoppel

Plaintiff also advances a claim of promissory estoppel stemming from PTT's promises to pay commission on all change orders and to pay bonuses for achieving certain cost-savings for the company. In Kentucky, a claim of promissory estoppel requires "'(1) a promise; (2) which the promisor should reasonably expect to induce action or forbearance of a definite and substantial character on the part of the promisee; (3) which does induce such action or forbearance; and (4) injustice can be avoided only by enforcement of the promise.'" Street v. U.S. Corrugated, Inc., 2011 WL 304568, *6 (W.D. Ky. Jan. 25, 2011)(quoting Abney v. Amgen, Inc., 443 F.3d 540, 549 (6th Cir. 2006) (quoting Bergman v. Baptist Healthcare System, Inc., 344

F. Supp. 2d 998, 1003 (W.D. Ky. 2004). PTT did not address this claim separate from the breach of contract claim. For same reasons set forth above, summary judgment is denied.

### C. Motion to Strike Affidavit of Jeff Martin

PTT filed a motion in limine to strike from the record the Affidavit of Jeff Martin. PTT argues that Jeff Martin was not disclosed as an individual that may have evidence in this case as required under the Scheduling Order. PTT maintains that Jeff Martin has not been deposed and discovery is closed in this case. PTT argues that it would be unduly prejudiced by the late disclosure in not having been afforded an opportunity to take evidence from Martin.

The record reflects that McGee served his initial disclosures pursuant to Fed. R. Civ. P. 26 on January 27, 2015. McGee listed specific individuals including any witness identified by Defendant. At the time of the initial disclosures, McGee had no knowledge that Martin had information relevant to his claim. On May 27, 2015, PTT served Answers to Interrogatories to McGee identifying Jeff Martin as a PTT Project Manager to which commissions were paid on a change order for a new tank. In addition, PTT tendered approximately 1500 pages of discovery material during the summer of 2015. Plaintiff's counsel represents that she attempted to contact Martin on multiple occasions and upon finally speaking to him in December of 2015, she confirmed that McGee would use Martin as a witness. On January 14, 2016, McGee served PTT with Supplemental Answers to PTT's interrogatories identifying Martin as a witness.

The Court finds that PTT is not prejudiced by McGee's late disclosure of Martin. PTT employed Martin and had knowledge that it paid him commission for a change order on a new tank. In fact, PTT disclosed this information to Plaintiff. Because the Plaintiff disclosed the witness more than thirty (30) days before the trial date (Fed. R. Civ. P. 26(a)(3)(A)(i)) and because the Defendant was aware Martin had information relevant to McGee's claims, the Court

9

denies PTT's motion to strike Martin's affidavit. If PTT desires to take the deposition of Martin prior to trial, the Court will reopen discovery for the limited purpose of allowing PTT to depose Martin.

## IV. CONCLUSION

For the reasons set forth above, **IT IS HEREBY ORDERED** that the motion by Defendant, Pittsburg Tank & Tower Company, Inc., for summary judgment [DN 13] is **DENIED**.

**IT IS FURTHER ORDERED** that the motion in limine by Defendant to strike from the record the Affidavit of Jeff Martin [DN 21] is **DENIED.** This matter is referred to the Magistrate for purposes of conducting a settlement conference and scheduling additional discovery, if any is requested.

**Joseph H. McKinley, Jr., Chief Judge**
**United States District Court**

cc: counsel of record

May 3, 2016